**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROLANDO HERNANDEZ,
        *Plaintiff-Appellant,*

v.

MARK TANNINEN; CITY OF
VANCOUVER,
        *Defendants-Appellees.*

No. 09-35085

D.C. No.
3:04-cv-05539-FDB

OPINION

Appeal from the United States District Court
for the Western District of Washington
Franklin D. Burgess, District Judge, Presiding

Argued and Submitted December 10, 2009
Submission Withdrawn December 11, 2009
Resubmitted May 12, 2010
Seattle, Washington

Filed May 12, 2010

Before: Ronald M. Gould and Richard C. Tallman,
Circuit Judges, and Roger T. Benitez, District Judge.*

Opinion by Judge Benitez

---

*The Honorable Roger T. Benitez, United States District Judge for the
Southern District of California, sitting by designation.

## COUNSEL

Philip A. Talmadge and Sidney C. Tribe, Talmadge/ Fitzpatrick PLLC, Tukwila, Washington, and Thomas S. Boothe, Portland, Oregon, for the plaintiff-appellant.

Daniel G. Lloyd, City Attorney's Office, Vancouver, Washington, and Barran Liebman LLP, Portland, Oregon, for the defendants-appellees.

## OPINION

BENITEZ, District Judge:

Rolando Hernandez appeals the district court's decision finding that any attorney-client or work product privilege between Hernandez and his prior attorney, Gregory Ferguson,

was waived and ordering the production of all thirty-five documents referenced in a privilege log.

## I

Hernandez filed suit against the City of Vancouver and Mark Tanninen in 2004, asserting claims for race and national origin discrimination based on disparate treatment, retaliation, and a hostile work environment while employed as a mechanic in the City's Fire Shop. Additionally, he alleges that Mark Tanninen and the City conspired to cover up their actions and to conceal proof of his claims in violation of 28 U.S.C. § 1985(3).

Hernandez was initially represented by Ferguson. During their initial meeting, Hernandez told Ferguson that Tanninen witnessed the discrimination and would corroborate Hernandez's story. In the course of investigating Hernandez's claims, Ferguson had a series of conversations with Tanninen over three days.

Tanninen initially corroborated Hernandez's allegations and agreed to provide a signed statement to that effect. After Tanninen spoke with Deputy Fire Chief Steve Streissguth, however, he indicated that he had known Streissguth for a long time, that he "could not do that to [Streissguth]," and that his getting involved would not be good for Streissguth and everyone involved. Realizing that he might now be a witness to Tanninen's conduct, Ferguson referred the case to another attorney. The tort claim was amended to include an allegation of conspiracy to cover up wrongdoing at the City Fire Shop.

In response to a request for production of documents, Hernandez produced a privilege log referencing thirty-five documents protected by either attorney-client or work product privilege, or both. No action was taken with regard to the request or the privilege log at that time. When the City moved for summary judgment, Hernandez provided his own affida-

vit, an affidavit from Ferguson, and some of Ferguson's handwritten notes as evidence in opposition to the motion. The district court granted summary judgment for the City, but a prior panel of our court reversed based, in part, on Ferguson's and Hernandez's affidavits. *Hernandez v. City of Vancouver*, 277 Fed. App'x 666, 671-72 (9th Cir. 2008).

Following remand, the City moved to compel production of Ferguson's entire file, arguing that because Hernandez relied on Ferguson as a witness to Tanninen's conduct, fairness mandated that any privilege that once existed with respect to Ferguson was waived entirely.

The district court adopted the City's reasoning, found any attorney-client or work product privilege between Hernandez and Ferguson was waived, and ordered the thirty-five documents referenced in the privilege log produced.

## II

**[1]** When this interlocutory appeal was filed, we had jurisdiction to consider it under the collateral order doctrine. *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078 (9th Cir. 2007). However, two days before oral argument, the Supreme Court decided *Mohawk Industries, Inc. v. Carpenter*, 130 S. Ct. 599 (2009), holding that "the collateral order doctrine does not extend to disclosure orders adverse to the attorney-client privilege." *Id.* at 609; *see also id.* at 604 n.1 (identifying the conflict among the circuits, including our decision in *In re Napster*). "We, of course, have jurisdiction to determine our own jurisdiction." *Special Invs., Inc. v. Aero Air, Inc.*, 360 F.3d 989, 992 (9th Cir. 2004). The reasoning of *Mohawk*, which eliminated collateral order jurisdiction on appeals of disclosure orders adverse to the attorney-client privilege, applies likewise to appeals of disclosure orders adverse to the attorney work product privilege. Further, Hernandez concedes that after *Mohawk*, the collateral order doctrine does not provide us with subject-matter jurisdiction to consider his appeal.

**[2]** We may treat an appeal from an otherwise nonappealable order as a petition for a writ of mandamus. *Miller v. Gammie*, 335 F.3d 889, 895 (9th Cir. 2003) (en banc). Whether we construe the appeal as a writ of mandamus depends on whether mandamus is itself justified. *Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*, 231 F.3d 1215, 1219-20 (9th Cir. 2000).

## III

"We have authority to issue a writ of mandamus under the 'All Writs Act,' 28 U.S.C. § 1651." *Cohen v. U.S. Dist. Court*, 586 F.3d 703, 708 (9th Cir. 2009). "Mandamus is appropriate to review discovery orders when particularly important interests are at stake." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1156-57 (9th Cir. 2010) (internal quotation marks omitted); *see also Mohawk*, 130 S. Ct. at 607 (identifying mandamus review as a possible remedy for a particularly injurious attorney-client privilege ruling). Mandamus is a "drastic and extraordinary remedy reserved for really extraordinary causes," *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004) (internal quotation marks omitted), and "only exceptional circumstances amounting to a judicial usurpation of power, or a clear abuse of discretion, will justify the invocation of this extraordinary remedy." *Id.* (internal quotation marks and citations omitted). "Although we determine de novo whether the writ should issue, we must be firmly convinced that the district court has erred." *Cohen*, 586 F.3d at 708.

"Whether a writ of mandamus should be granted is determined case-by-case, weighing the factors outlined in *Bauman v. United States Dist. Court*, 557 F.2d 650 (9th Cir. 1977)." *Cole v. U.S. Dist. Court*, 366 F.3d 813, 816-17 (9th Cir. 2004). In *Bauman*, "we established five guidelines to determine whether mandamus is appropriate in a given case: (1) whether the petitioner has no other means, such as a direct appeal, to obtain the desired relief; (2) whether the petitioner

will be damaged or prejudiced in any way not correctable on appeal; (3) whether the district court's order is clearly erroneous as a matter of law; (4) whether the district court's order is an oft repeated error or manifests a persistent disregard of the federal rules; and (5) whether the district court's order raises new and important problems or issues of first impression." *Perry*, 591 F.3d at 1156 (citing *Bauman*, 557 F.2d at 654-55). "The factors serve as guidelines, a point of departure for our analysis of the propriety of mandamus relief." *Id.* (citing *Admiral Ins. Co. v. U.S. Dist. Court*, 881 F.2d 1486, 1491 (9th Cir. 1989)). "Not every factor need be present at once." *Id.* "In fact, rarely if ever will a case arise where all the guidelines point in the same direction or even where each guideline is relevant or applicable." *Special Invs.*, 360 F.3d at 994 (internal quotation marks omitted).

## A

**[3]** We begin with the third factor, clear error, because "the absence of the third factor . . . is dispositive." *Perry*, 591 F.3d at 1156; *see also Cohen*, 586 F.3d at 708 ("We will begin by analyzing the district court's opinion for clear error, as this factor is highly significant and failure to show clear error may be dispositive of the petition." (internal quotation marks omitted)). "The clear error standard is significantly deferential and is not met unless the reviewing court is left with a 'definite and firm conviction that a mistake has been committed.' " *Cohen*, 586 F.3d at 708 (quoting *Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 623 (1993)).

**[4]** The attorney-client privilege is intended "to encourage clients to make full disclosure to their attorneys," recognizing that sound advice "depends upon the lawyer's being fully informed by the client." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (internal quotation marks omitted). The work product doctrine is a "qualified privilege" that protects "certain materials prepared by an attorney acting for his client in anticipation of litigation." *United States v. Nobles*, 422 U.S.

225, 237-38 (1975) (internal quotation marks omitted). Both privileges may be waived. *United States v. Plache*, 913 F.2d 1375, 1379 (9th Cir. 1990) (attorney-client); *Nobles*, 422 U.S. at 239 (work product); *see also Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340-41 (9th Cir. 1996) (finding that waiver prevents selective disclosure—disclosing that which supports a cause while hiding the unfavorable).

**[5]** The district court did not clearly err by concluding that Hernandez waived both privileges as they pertained to the conspiracy claim. Disclosing a privileged communication or raising a claim that requires disclosure of a protected communication results in waiver as to all other communications on the same subject. *Nobles*, 422 U.S. at 239-40*; Weil v. Inv./Indicators, Research & Mgmt.*, 647 F.2d 18, 24 (9th Cir. 1981) ("[V]oluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject."); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) ("Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived."). In opposing the City's motion for summary judgment, Hernandez disclosed communications between him and Ferguson about Tanninen. He also disclosed favorable portions of Ferguson's communications with Tanninen and produced some of Ferguson's notes of those conversations.

**[6]** Disclosure constitutes a waiver of the attorney-client privilege, however, "only as to communications about the matter actually disclosed." *Chevron*, 974 F.2d at 1162 (quoting *Weil*, 647 F.2d at 25); *see also Plache*, 913 F.2d at 1380 (finding disclosure of a privileged communication waived the privilege "on all other communications on the same subject"); *United States v. Mendelsohn*, 896 F.2d 1183, 1189 (9th Cir. 1990) (affirming decision confining testimony based on waiver to the subject of the waiver). Hernandez disclosed only

his communications with Ferguson about Tanninen, waiving attorney-client privilege only as to that matter.

**[7]** The work product privilege is also only waived "with respect to matters covered in . . . testimony." *Nobles*, 422 U.S. at 239-40. Hernandez produced notes from Ferguson's communications with Tanninen that were protected work product, but that constituted a waiver of work product privilege only as to that subject. *See McKenzie v. McCormick*, 27 F.3d 1415, 1420 (9th Cir. 1994) (applying *Hickman v. Taylor*, 329 U.S. 495, 512-13 (1947), and *Upjohn*, 449 U.S. at 399, and finding that notes of interviews with a witness were protected work product).[1]

**[8]** Because Hernandez only waived privilege with respect to his communications with Ferguson about Tanninen, as well as Ferguson's communications and work product relating to Ferguson's interaction with Tanninen, the district court clearly erred in finding a blanket waiver of the attorney-client and work product privileges as to the entire case.

## B

**[9]** Having identified clear error as to the district court's conclusion that Hernandez's disclosure constituted a blanket waiver of attorney-client and work product privilege, we turn to the remaining *Bauman* factors. The first factor, whether Hernandez has no other means to obtain the desired relief, is met because collateral order appeal is no longer available to Hernandez and "[a] discovery order . . . is interlocutory and non-appealable." *Perry*, 591 F.3d at 1157 (quoting *City of Las Vegas v. Foley*, 747 F.2d 1294, 1297 (9th Cir. 1984)); *see also Admiral*, 881 F.2d at 1491 (finding mandamus was the only method available for review of a disclosure order adverse to the attorney-client privilege).

---

[1]While not applied in this case, new Federal Rule of Evidence 502 also limits any waiver by disclosure to the subject matter disclosed.

**[10]** The second factor, whether Hernandez will be damaged in any way not correctable on appeal, is also satisfied. In *Admiral*, we found the second factor was satisfied by a disclosure order adverse to the attorney-client privilege because "an appeal after disclosure of the privileged communication is an inadequate remedy" for the "irreparable harm a party likely will suffer if erroneously required to disclose privileged materials or communications." 881 F.2d at 1491. Although the *Mohawk* court found that "postjudgment appeals generally suffice to protect the rights of litigants and assure the vitality of the attorney-client privilege," *Mohawk*, 130 S. Ct. at 606, the Court observed that other "discretionary review mechanisms," including a writ of mandamus, are available "for promptly correcting serious errors." *Id.* at 607-08 (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 883 (1994)). These other avenues, however, are only appropriate for a "particularly injurious or novel privilege ruling." *Id.* at 607.

In accord with this guidance, we consider whether the district court's ruling is particularly injurious or novel. There is nothing novel about Hernandez's claim to the attorney-client or work product privileges or the scope of either. The blanket waiver, however, is particularly injurious. The finding of a blanket waiver of both privileges could result in matters far beyond the scope of the waiver being disclosed, including case strategy, the strengths and weaknesses of Hernandez's claims, and all communications between Ferguson and Hernandez. With such a broad finding, Ferguson might be forced to testify about his evaluation of matters unrelated to Tanninen or the conspiracy claim. The breadth of the waiver finding, untethered to the subject-matter disclosed, constitutes a particularly injurious privilege ruling.

Neither the fourth nor fifth factor is met. The fourth factor, whether the error is oft repeated or manifests a persistent disregard of the federal rules, is not satisfied because there is nothing before us that suggests this error has been made more

than once. *See Cole*, 366 F.3d at 823 n.13. And the fifth factor, whether the order raises new and important problems or issues of first impression, is also not satisfied because there is nothing particularly new about a waiver of either privilege.

**[11]** Nonetheless, because the first three *Bauman* factors—including clear error—are met here, and because the district court's order finding a blanket waiver of both the attorney-client and work product privileges is "particularly injurious" to Hernandez's interests, we conclude that it is appropriate to grant a writ of mandamus to correct the district court's overbroad privilege ruling. Nothing in our opinion should be construed as precluding the district court from concluding that Hernandez has failed to meet his burden of showing that attorney-client or work product privilege applies to the documents at issue, ordering a more complete privilege log, conducting an in camera review, or taking other appropriate action.

## IV

**[12]** The district court clearly erred in finding an unlimited waiver of the attorney-client and work product privileges, and the *Bauman* factors favor granting the petition. Accordingly, we grant the petition for a writ of mandamus. The district court shall reconsider its order granting the City of Vancouver's motion to compel with respect to the thirty-five documents on the privilege log, applying the limited scope of Hernandez's waiver of attorney-client and work product privileges consistent with this opinion.

**PETITION GRANTED.**