**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: VIRGINIA VAN DUSEN; JOHN
DOE; JOSEPH SHEER,

VIRGINIA VAN DUSEN; JOSEPH
SHEER; JOHN DOE,
                          *Petitioners,*

v.

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF ARIZONA, PHOENIX,
                          *Respondent,*

SWIFT TRANSPORTATION CO. INC.
INTERSTATE EQUIPMENT; INTERSTATE
EQUIPMENT LEASING; INCORPORATED;
CHAD KILLIBREW; JERRY MOYES,
                *Real Parties in Interest.*

No. 10-73780

D.C. No.
2:10-cv-00899-JWS

OPINION

Petition for Writ of Mandamus
to the United States District Court
for the District of Arizona

Argued and Submitted
May 9, 2011—San Francisco, California

Filed July 27, 2011

9609

Before: Procter Hug, Jr. and Richard A. Paez, Circuit Judges,
and Liam O'Grady, District Judge.*

Opinion by Judge O'Grady

---

*The Honorable Liam O'Grady, District Judge for the U.S. District
Court for Eastern Virginia, Alexandria, sitting by designation.

**COUNSEL**

Susan Martin, Martin & Bonnett, Phoenix, Arizona, for the plaintiff-appellant.

Ronald Holland, Sheppard, Mullin, Richter & Hampton, San Francisco, California, for the defendant-appellee.

**OPINION**

O'GRADY, District Judge:

This matter comes before us on petition for a writ of mandamus. Petitioners argue that the District Court erred by refusing to resolve their claim of exemption from arbitration under Section 1 of the Federal Arbitration Act ("FAA") and Section 12-1517 of the Arizona Arbitration Act ("AAA") before compelling arbitration pursuant to those acts. We agree that Petitioners make a strong argument that the District Court erred, but we nonetheless hold that this case does not warrant the extraordinary remedy of mandamus. We therefore deny the petition.

## I. FACTUAL AND PROCEDURAL HISTORY

Petitioners Joseph Sheer ("Sheer") and Virginia Van Dusen ("Van Dusen") (collectively "Petitioners") are interstate truck drivers who entered independent contractor operating agreements ("ICOAs") with Swift Transportation Co., Inc. ("Swift"). In December 2009, Sheer brought suit against Swift and Interstate Equipment Leasing, Co., Inc. ("IEL") in the United States District Court for the Southern District of New York. On March 24, 2010, Petitioners filed a Second Amended Collective and Class Action Complaint against Swift and IEL[1] (collectively "Defendants), alleging violations

---

[1]The Second Amended Complaint also named as Defendants Jerry Moyes and Chad Killebrew, owners and operators of Swift and IEL.

of the Fair Labor Standards Act, 29 U.S.C. § 206 *et seq.*, forced labor in violation of 18 U.S.C. § 1589, unjust enrichment, and violations of California and New York labor laws. The trial court subsequently transferred the matter to the United States District Court for the District of Arizona.

On May 21, 2010, Defendants moved to compel arbitration pursuant to arbitration clauses contained in the ICOAs. Petitioners opposed the motion, asserting that the ICOAs were exempt from arbitration under Section 1 of the FAA ("Section 1"), which exempts "contracts of employment of seaman, railroad employees, or any other class of workers engaged in foreign or interstate commerce" from the FAA's provisions. 9 U.S.C. § 1. The District Court declined to rule on the applicability of the exemption, holding that the question of whether an employer/employee relationship existed between the parties was a question for the arbitrator to decide in the first instance. Finding that the ICOAs contained valid arbitration clauses, the District Court ordered arbitration. Petitioners subsequently moved for certification of an interlocutory appeal, which the District Court denied. Petitioners now seek mandamus relief before this court.

## II. Discussion

### A. Standard of Review

The writ of mandamus is a "drastic and extraordinary" remedy "reserved for really extraordinary causes." *Ex parte Fahey*, 332 U.S. 258, 259-60 (1947). "[O]nly exceptional circumstances amounting to a judicial usurpation of power, or a clear abuse of discretion will justify the invocation of this . . . remedy." *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 380 (2004) (internal quotations and citations omitted). The petitioner bears the burden of showing that "its right to issuance of the writ is 'clear and indisputable.' " *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 384 (1953) (quoting *United States v. Duell*, 172 U.S. 576, 582 (1899)).

In deciding whether to grant mandamus relief, we consider five factors: (1) whether the petitioner has other adequate means, such as a direct appeal, to attain the relief he or she desires; (2) whether the petitioner will be damaged or prejudiced in a way not correctable on appeal; (3) whether the district court's order is clearly erroneous as a matter of law; (4) whether the district court's order makes an "oft-repeated error," or "manifests a persistent disregard of the federal rules"; and (5) whether the district court's order raises new and important problems, or legal issues of first impression. *Bauman v. U.S. Dist. Court*, 557 F.2d 650, 654-55 (9th Cir. 1977).

The third factor, clear error as a matter of law, is a necessary condition for granting a writ of mandamus. *Hernandez v. Tanninen*, 604 F.3d 1095, 1099 (9th Cir. 2010). The remaining *Bauman* factors, while useful as an analytical framework, seldom yield "bright-line distinctions." *Bauman*, 557 F.2d at 655. "[Q]uestions of degree" and "conflicting indicators" frequently arise, *id.*, rendering the factors unsuitable for mechanical application. In the final analysis, the decision of whether to issue the writ lies within our discretion. *Cole v. U.S. Dist. Court for Dist. of Idaho*, 366 F.3d 813, 817 (9th Cir. 2004).

## B.   CLEAR ERROR

We begin by considering the third *Bauman* factor, clear error, because the absence of this factor will defeat a petition for mandamus. *Hernandez*, 604 F.3d at 1099; *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1146 (9th Cir. 2005). "Clear error" is a highly deferential standard of review. Mandamus will not issue merely because the petitioner has identified legal error. *Cal. Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087, 1092 (9th Cir. 2008); *Will v. United States*, 389 U.S. 90, 104 (1967) ("Mandamus, it must be remembered, does not 'run the gauntlet of reversible errors.' ") (quoting *Bankers Life,* 346 U.S. at 382). Rather, we must have "a definite and firm conviction

that the district court's interpretation . . . was incorrect." *DeGeorge v. U.S. Dist. Court for Cent. Dist. of Cal.*, 219 F.3d 930, 936 (9th Cir. 2000).

## 1.  THE DISTRICT COURT DECISION

Before the District Court, Petitioners argued that, because they were "employees" of Defendants, the ICOAs were exempt from arbitration under Section 1 of the FAA. For support, Petitioners cited various provisions from the ICOAs and from a separate lease, which purportedly demonstrated that Petitioners' relationships with Defendants were those of employees to employers. "The issue of whether an employer/employee relationship exists between the plaintiffs and defendants," Petitioners added, "is not only central to the question of exemption from arbitration, it is also a central element of all of Plaintiffs' substantive claims other than unconscionability." Pls.' Opp'n to Defs.' Mot. to Compel Arbitration 8 n.5 (J.A. 46).

The District Court declined to rule on the applicability of the FAA exemption, holding that the ICOAs delegated the question of whether an employer/employee relationship existed to the arbitrator:

> Deciding whether an employer-employee relationship exists between the parties falls within the scope of the arbitration agreement, because the arbitration agreement explicitly includes "any disputes arising out of or relating to the relationship created by the [Contractor Agreement]," as well as "any disputes as to the rights and obligations of the parties, including the arbitrability of disputes between the parties" under the terms of the arbitration agreement.

Mem. Op. 19 (J.A. 28).[2] The District Court further noted that

---

[2]The full text of the relevant portion of the contractor agreement cited by the District Court reads as follows:

resolving the question of whether an employer-employee relationship existed would require analysis of the ICOAs as a whole, as well as factfinding on the amount of control exerted over Petitioners by defendants. *Id.* To conduct such an analysis would, according to the District Court, exceed the proper role of courts in addressing threshold questions of arbitrability: to consider only the validity and scope of the arbitration clause itself. *Id.* (citing *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 477 (9th Cir. 1991)).

Petitioners contend that the District Court's refusal to address the exemption issue prior to ordering arbitration constitutes clear error.[3]

---

> All disputes and claims arising under, arising out of or relating to this Agreement, including an allegation of breach thereof, and any disputes arising out of or relating to the relationship created by the Agreement, including any claims or disputes arising under or relating to any state or federal laws, statutes or regulations, and any disputes as to the rights and obligations of the parties, including the arbitrability of disputes between the parties, shall be fully resolved by arbitration in accordance with Arizona's Arbitration Act and/or the Federal Arbitration Act. Any arbitration between the parties will be governed by the Commercial Rules of the American Arbitration Association.

Defs.' Mot. to Compel Arbitration, Ex. A, Contractor Agreement ¶ 24 (S.A. 11).

[3]The District Court compelled arbitration pursuant to the Arizona Arbitration Act ("AAA") as well as the Federal Arbitration Act ("FAA"). The AAA, like the FAA, exempts employment agreements from the Act's coverage. *See N. Valley Emergency Specialists, L.L.C. v. Santana*, 93 P.3d 501, 506 (Ariz. 2004) ("the plain language of A.R.S. § 12-1517 exempts all employer and employee employment agreements from the provisions of Arizona's arbitration act"). Section 12-1502 of the AAA, like Section 4 of the FAA, "limits the scope of judicial inquiry into the merits of a contract dispute to whether or not there exists an arbitration clause governing the controversy." *U.S. Insulation, Inc. v. Hilro Constr. Co., Inc.*, 705 P.2d 490, 493 (Ariz. Ct. App. 1985). Given the similarities between the relevant sections of the FAA and AAA, we hold that our analysis of the issues raised under the former statute sufficiently addresses the same issues as raised under the latter.

## 2. STATUTORY FRAMEWORK

**[1]** Section 2 of the FAA states that "an agreement in writing to submit to arbitration an existing controversy arising out of . . . a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. To enforce this provision, any party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. If, after hearing the parties, the district court is satisfied that "the making of the agreement for arbitration or the failure to comply therewith is not in issue," the court must order the parties "to proceed to arbitration in accordance with the terms of the agreement." *Id.*

**[2]** The FAA, and Section 4's authority to compel arbitration, do not extend to all arbitration agreements. As Section 2 makes clear, the Act applies only to contracts "evidencing a transaction involving commerce," or arising from a "maritime transaction." 9 U.S.C. § 2. Section 1, titled "exceptions to operation of title," imposes a further limit on the Act's scope, stating "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1.

## 3. ANALYSIS

**[3]** Under established law, "[t]he question whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability, is an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotations omitted); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("Just as the

arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter.") (internal citations and italics omitted); *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."). The issue now before us is one of first impression in the federal courts of appeal: we consider whether the district court must itself determine the applicability of a Section 1 exemption, or whether the exemption question is a "question of arbitrability" that contracting parties may validly delegate to an arbitrator.

Defendants argue that whether a contract comes within the scope of an FAA exemption is a "question of arbitrability" like any other. Pursuant to their interpretation, once the district court determines that a valid arbitration clause delegates the exemption question to an arbitrator, it must compel arbitration. The law does not, under such circumstances, require, or even permit, the district court to assess for itself whether the contract is exempt under Section 1.

Petitioners argue that the issue of whether a Section 1 exemption applies is not a "question of arbitrability" that parties can legally delegate to an arbitral forum. Under Petitioners' interpretation, the district court must make an antecedent determination that a contract is arbitrable under Section 1 of the FAA before ordering arbitration pursuant to Section 4. For the reasons that follow, we believe Petitioners offer the better interpretation.

**[4]** A district court's authority to compel arbitration arises under Section 4 of the FAA. Section 1 of the FAA, titled "exceptions to operations of this title," explicitly carves out a category of cases exempt from the provisions of the Act. *See* S. REP. NO. 68-536, at 2 (1924) (stating that Section 1 defines

the contracts to which "the bill will be applicable."); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001) (stating that Section 1 of the FAA "exempts contracts from the FAA's coverage"). It follows that a district court has no authority to compel arbitration under Section 4 where Section 1 exempts the underlying contract from the FAA's provisions. *See Harden v. Roadway Package Sys., Inc.*, 249 F.3d 1137, 1140 (9th Cir. 2001) (holding that "[t]he district court lacked the authority to compel arbitration . . . because the FAA is inapplicable to [employees] who are engaged in interstate commerce").

**[5]** Here, Defendants moved to invoke the District Court's authority to order arbitration under Section 4 of the FAA. The District Court, acting pursuant to that section, compelled Petitioners to arbitrate. In essence, Defendants and the District Court have adopted the position that contracting parties may invoke the authority of the FAA to decide the question of *whether the parties can invoke the authority of the FAA*. This position puts the cart before the horse: Section 4 has simply no applicability where Section 1 exempts a contract from the FAA, and private contracting parties cannot, through the insertion of a delegation clause, confer authority upon a district court that Congress chose to withhold.

**[6]** The Supreme Court's decision in *Bernhardt v. Polygraphic Co. of America*, 350 U.S. 198 (1956), is instructive here. In *Bernhardt*, the Court of Appeals upheld a district court's decision to stay litigation pending arbitration, although the contract containing the arbitration agreement did not evidence a transaction involving commerce within the meaning of 9 U.S.C. § 2. *Id.* at 199-200. Section 3 of the FAA,[4] as the

---

[4]Section 3 of the FAA states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an

Court of Appeals reasoned, "covers all arbitration agreements even though they do not involve . . . transactions in commerce." *Id.* at 201. The Supreme Court reversed, explicitly rejecting the appellate court's interpretation:

> We disagree with that reading of the Act. Sections 1, 2, and 3 are integral parts of a whole. To be sure, § 3 does not repeat the words "maritime transaction" or "transaction involving commerce", used in §§ 1 and 2. But §§ 1 and 2 define the field in which Congress was legislating. Since § 3 is a part of the regulatory scheme, we can only assume that the "agreement in writing" for arbitration referred to in § 3 is the kind of agreement which §§ 1 and 2 have brought under federal regulation.

*Id*. The *Bernhardt* Court's reasoning applies with equal force in interpreting the relationship between Sections 1, 2, and 4 of the FAA. It follows that a district court may not compel arbitration pursuant to Section 4 unless the "agreement for arbitration" is of a kind that Sections 1 and 2 have brought under federal regulation.

Our reading of the FAA is consistent with the relevant case law in the field. As previously stated, the law clearly permits parties to delegate "questions of arbitrability" to an arbitrator. *See, e.g.*, *AT & T Techs.*, 475 U.S. at 649. The Supreme Court defines "questions of arbitrability" as questions of "whether the parties have submitted a particular dispute to arbitration." *Howsam*, 537 U.S. at 83. The question at issue here does not fit within that definition, however: whatever the contracting

---

agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration. 9 U.S.C. § 3.

parties may or may not have agreed upon is a distinct inquiry from whether the FAA confers authority on the district court to compel arbitration. The Court has never indicated that parties may delegate this determination to an arbitrator in the first instance; on the contrary, it has affirmed that, when confronted with an arbitration clause, the district court must first consider whether the agreement at issue is of the kind covered by the FAA. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 (1967) (resolving "first question" of whether a consulting agreement "evidenc[ed] transactions in 'commerce' "). This is equally true where the arbitration clause at issue delegates an arbitrability question because "[a]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and *the FAA operates on this additional arbitration agreement just as it does on any other*." *Rent-a-Center, West, Inc. v. Jackson*, ___ U.S. ___, 130 S. Ct. 2772, 2777-78 (2010) (emphasis added).

**[7]** Though we favor Petitioners' interpretation over that of the District Court, this does not conclude our analysis under the third *Bauman* factor. "[W]e will not grant mandamus relief simply because a district court commits an error, even one that would ultimately require reversal on appeal." *Wilson v. U.S. Dist. Court for E. Dist. of Cal.*, 103 F.3d 828, 830 (9th Cir. 1996) (quotation omitted); *see also In re Morgan*, 506 F.3d 705, 713 (9th Cir. 2007) (holding that district court error was not "clear error" in denying petition for mandamus); *United States v. Mehrmanesh*, 652 F.2d 766, 770 (9th Cir. 1981) ("Even if the trial court made an error of law . . . that fact itself does not render its decision subject to correction by mandamus, for 'then every interlocutory order which is wrong might be reviewed under the All Writs Act.' ") (quoting *Bankers Life*, 346 U.S. at 383). Mandamus may issue only if we determine that the District Court's decision was *clearly erroneous*.

**[8]** Under the present circumstances, we cannot say that the clear error standard is met. First, we note that the question

in this case—whether the district court, as opposed to an arbitrator, must determine the applicability of an FAA exemption—is one of first impression in the federal courts of appeal. The absence of controlling precedent weighs strongly against a finding of clear error. *See, e.g.*, *In re Morgan*, 506 F.3d at 713 (holding that district court error was not "clear error" because "no prior Ninth Circuit authority prohibited the course taken by the district court"); *Medhekar v. U.S. Dist. Court for N. Dist. of Cal.*, 99 F.3d 325, 327 (9th Cir. 1996) ("Because this is a question of first impression not yet addressed by any circuit court in a published opinion, petitioners cannot satisfy the third . . . *Bauman* factor[ ], requiring a showing of a clear . . . error by the district court."); *King v. U.S. Dist. Court for Cent. Dist. of Cal.*, 16 F.3d 992, 993 (9th Cir. 1994) (Reinhardt, J., concurring) (stating that district court ruling was not clearly erroneous where Ninth Circuit had not yet considered underlying substantive issue and other circuits had rejected petitioner's theory).

Furthermore, while we believe that the law, on balance, favors Petitioners' position, we recognize that certain language appearing in the relevant doctrine could be interpreted to lend support to the District Court's position. Our opinions have, for example, emphasized that "[t]he FAA embodies a clear federal policy in favor of arbitration," *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999), and that "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). Moreover, district courts have been instructed to consider only the validity and scope of the arbitration agreement itself when addressing whether a question is arbitrable, *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000), and to avoid entanglement with the merits of the underlying claims. *AT & T Techs.*, 475 U.S. at 649-50. The dissent in *Rent-a-Center* opined that where "questions of arbitrability are bound up in an underlying dispute," Supreme Court precedent "reflects a judgment that the

national policy favoring arbitration outweighs the interest in preserving a judicial forum for questions of arbitrability." *Rent-a-Center*, 130 S. Ct. at 2787-88 (Stevens, J., dissenting) (internal quotations, citations, and emphasis omitted).

**[9]** For reasons previously discussed, we believe the best reading of the law requires the district court to assess whether a Section 1 exemption applies before ordering arbitration. We acknowledge, however, that the law's repeated admonishments that district courts refrain from addressing the merits of an underlying dispute can be read to favor the District Court's decision. This factor, along with the lack of controlling precedent, render the question relatively close. Whether or not the district court's interpretation ultimately withstands appeal, we cannot find it "clearly erroneous" as that term is used in the mandamus analysis. *Mehrmanesh*, 652 F.2d at 771.

### III.   CONCLUSION

**[10]** Only where a petitioner demonstrates a "clear and indisputable" entitlement to mandamus will we grant such an exceptional form of relief. *Bankers Life*, 346 U.S. at 384. Because we are not satisfied that the District Court committed clear error, we must deny the petition.

**DENIED.**