**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| IN RE WILLIAM GRICE, | No. 20-70780 |
| WILLIAM GRICE,<br>*Petitioner*, | D.C. No.<br>2:18-cv-02995-<br>PSG-GJS |
| v. | |
| UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES,<br>*Respondent*, | OPINION |
| UBER TECHNOLOGIES, INC.,<br>*Real Party in Interest.* | |

Petition for Writ of Mandamus

Argued and Submitted August 11, 2020
Pasadena, California

Filed September 4, 2020

Before:  Diarmuid F. O'Scannlain and Consuelo M. Callahan, Circuit Judges, and Michael H. Watson,[*] District Judge.

Opinion by Judge Callahan

## SUMMARY[**]

### Mandamus / Arbitration

The panel denied a petition for a writ of mandamus seeking to vacate the district court's order compelling arbitration in an Uber driver's putative class action alleging that the company failed to safeguard his and other drivers' and riders' personal information and mishandled a data security breach.

The district court concluded that the Uber driver did not fall within an arbitration exemption set forth in § 1 of the Federal Arbitration Act for workers engaged in foreign or interstate commerce.  The panel held that, even accepting that there were some tensions between the district court's ruling and recent circuit cases addressing the scope and application of the exemption, the district court's decision was not clearly erroneous as a matter of law, as required for granting a writ of mandamus.

[*] The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Richard P. Rouco (argued), Quinn Connor Weaver Davies & Rouco LLP, Birmingham, Alabama; D. Anthony Mastando, and Eric J. Artrip, Mastando & Artrip LLC, Huntsville, Alabama; for Petitioner.

Theane Evangelis (argued), Gibson Dunn & Crutcher LLP, Los Angeles, California; Catherine E. Stetson, Michelle A. Kisloff, and Kyle M. Druding, Hogan Lovells US LLP, Washington, D.C.; Vassi Iliadis, Hogan Lovells US LLP, Los Angeles, California; for Real Party in Interest.

**OPINION**

CALLAHAN, Circuit Judge:

The Federal Arbitration Act ("FAA" or "the Act") places arbitration agreements on an equal footing with other contracts, requiring courts to enforce them according to their terms. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67–68 (2010) (citations omitted). But the Act exempts from its coverage "contracts of employment" of three categories of workers: "seamen," "railroad employees," and a residual category comprising "any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The district court held that rideshare drivers who pick up and drop off passengers at airports do not fall within this residual category and therefore may be judicially compelled to arbitrate in accordance with the terms of their contracts. We are asked to decide whether the district court's decision is "clearly erroneous as a matter of law." *Bauman v. U.S. Dist. Court*, 557 F.2d 650, 654–55 (9th Cir. 1977). We conclude that it is not.

I

Uber Technologies, Inc. ("Uber") is a technology company specializing in rideshare services. Uber's smartphone application (the "Uber App") connects riders needing transportation with local drivers available to drive them to their destinations for a fare. When a driver accepts a rideshare request through the Uber App, the App provides them basic rider information, including name and pick-up location. The rider then communicates a desired drop-off location, and fares are generated based on distance and time to the drop-off. Rideshare fares are charged automatically via the Uber App, with Uber withholding a percentage of each fare as a "service fee."

William Grice is an Uber driver based in Alabama who has, since 2016, used the Uber App to provide rideshare services to and from Huntsville International Airport and Birmingham-Shuttlesworth International Airport. Uber entered into agreements with these airports (and many others) to allow Uber drivers like Grice to pick up arriving passengers and transport them to their final destinations. In the course of his work, Grice never crosses state lines. Thus, Grice's passengers travel interstate (by virtue of the flights they take), but Grice does not.

In November 2017, Grice filed a putative class action lawsuit against Uber, alleging that the company failed to safeguard his and other Uber drivers' and riders' personal information and mishandled a data security breach in which that information was stolen by online hackers.[1] Uber moved

---

[1] Grice filed his claim in the District Court for the Northern District of Alabama. The lawsuit and nine other related cases were consolidated

to compel arbitration, citing the Technology Services Agreement ("TSA") that Grice and other Uber drivers signed requiring arbitration of "any disputes . . . arising out of or related to [the driver's] relationship" with Uber and prohibiting arbitration "on a class, collective action, or representative basis." Grice responded that he "driv[es] passengers (who are engaged in interstate travel) and their luggage to and from airports" and therefore qualifies for the FAA's § 1 exemption. The district court disagreed and compelled arbitration.

Grice now petitions this court for a writ of mandamus vacating the district court's referral to arbitration.**[2]** Because mandamus "is a drastic and extraordinary remedy reserved only for really extraordinary causes," we may not grant Grice's request unless he shows that his right to the writ is "clear and indisputable." *In re Van Dusen*, 654 F.3d 838, 840–41 (9th Cir. 2011) (internal quotation marks and citations omitted). At a minimum, he must show that the district court's interpretation of § 1 amounts to "clear error as a matter of law." *Id.* at 841. This standard of review is highly deferential, requiring us to "have a definite and firm conviction that the district court's interpretation . . . was incorrect." *Id.* (internal quotation marks and citation omitted). Where no prior Ninth Circuit authority prohibits the district court's ruling, or where the issue in question has not yet been addressed by any circuit court in a published

by the Judicial Panel on Multidistrict Litigation and referred to the district court below for coordinated pretrial proceedings.

**[2]** In granting Uber's motion to compel arbitration, the district court also relied on the terms and conditions of Grice's rider agreement, which Grice does not address in his petition.

opinion, the ruling cannot be clearly erroneous.[3] *In re Swift*, 830 F.3d 913, 917 (9th Cir. 2016).

## II

Congress enacted the FAA in 1925 "in response to a perception that courts were unduly hostile to arbitration." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). Designed to replace this "widespread judicial hostility" with a "liberal policy favoring arbitration," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation omitted), the FAA "requires courts rigorously to enforce arbitration agreements according to their terms," *Epic Sys.*, 138 S. Ct. at 1621 (citation and internal quotation marks omitted). Section 1 of the FAA, however, exempts from the Act's coverage "contracts of employment of seamen, railroad employees, or *any other class of workers engaged in foreign or interstate commerce*." 9 U.S.C. § 1 (emphasis added). This last category is commonly referred to as § 1's "residual clause."

The Supreme Court has narrowly interpreted the residual clause as covering "only contracts of employment of transportation workers"—that is, workers who, as a class, are "engaged in foreign or interstate commerce." *Circuit*

---

[3] Our decision whether to grant mandamus relief is also informed by four other factors: whether the petitioner has other adequate means to attain relief, such as a direct appeal; whether the petitioner will be damaged or prejudiced in a way not correctable on appeal; whether the district court's error is "oft-repeated" or "manifests a persistent disregard of the federal rules"; and whether the order raises new and important problems, or legal issues of first impression. *In re Van Dusen*, 654 F.3d at 841 (quoting *Bauman*, 557 F.2d at 654–55). However, "clear error as a matter of law" is the dispositive factor; its absence "will defeat a petition for mandamus." *Id.* (citing *Hernandez v. Tanninen,* 604 F.3d 1095, 1099 (9th Cir. 2010)).

*City Stores, Inc. v. Adams*, 532 U.S. 105, 112, 119 (2001). The Court has also noted that most courts have defined "transportation workers" to mean those engaged in the actual movement of *goods* in interstate commerce. *Id.* at 119 (citing *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1471 (D.C. Cir. 1997)). But we have described the residual clause as applying to "the contracts of employees who actually transport *people or goods* in interstate commerce." *Craft v. Campbell Soup Co.*, 177 F.3d 1083, 1085 (9th Cir. 1999) (per curiam) (emphasis added), *abrogated on other grounds by Circuit City*, 532 U.S. 105. And this broader interpretation has been embraced by several courts in recent decisions addressing the § 1 exemption status of rideshare drivers and other "gig economy" workers.

In *Singh v. Uber Technologies, Inc.*, the Third Circuit held that "the residual clause of § 1 is not limited to transportation workers who transport goods, but may also apply to those who transport passengers, so long as they are engaged in interstate commerce or in work so closely related thereto as to be in practical effect part of it." 939 F.3d 210, 219 (3d Cir. 2019). In *Waithaka v. Amazon.com, Inc.*, the First Circuit held "that the [§ 1] exemption encompasses the contracts of transportation workers who transport goods *or people* within the flow of interstate commerce, not simply those who physically cross state lines in the course of their work." 966 F.3d 10, 13 (1st Cir. 2020) (emphasis added). And in *Rogers v. Lyft, Inc.*, a district court in our circuit concluded that "[t]he traditional tools of statutory interpretation all point in the same direction: Section 1 is not limited to classes of workers who transport goods in interstate commerce," but rather exempts "classes of workers engaged in transporting goods *or people* across state lines." — F. Supp. 3d —, No. 20-CV-01938-VC, 2020 WL 1684151, at *5 (N.D. Cal. Apr. 7, 2020) (emphasis added).

In each case, the critical factor was not the nature of the item transported in interstate commerce (person or good) or whether the plaintiffs themselves crossed state lines, but rather "[t]he nature of the business for which a class of workers perform[ed] their activities." *Waithaka*, 966 F.3d at 10; *accord Rittman v. Amazon.com, Inc.*, — F.3d —, 2020 WL 4814142, at *9 (9th Cir. 2020); *see also Rogers*, 2020 WL 1684151, at *5 ("[T]he question posed by the exemption is 'not whether the individual worker actually engaged in interstate commerce, but whether the class of workers to which the complaining worker belonged engaged in interstate commerce.'" (quoting *Bacashihua v. U.S. Postal Serv.*, 859 F.2d 402, 405 (6th Cir. 1988))). Thus, for example, a truck driver for an interstate trucking company may be exempt even if the particular trucker only occasionally, *see Int'l Brotherhood of Teamsters Local Union No. 50 v. Kienstra Precast, LLC*, 702 F.3d 954, 958 (7th Cir. 2012), or never, *see Bacashihua*, 859 F.2d at 405, drives across state lines. Likewise, so-called "last mile" delivery drivers may be engaged in interstate commerce based on the nature of their employer's business "regardless of whether the workers themselves physically cross state lines." *Waithaka*, 966 F.3d at 26 (holding that Amazon Flex ("AmFlex") delivery drivers are exempt under § 1); *accord Rittman*, 2020 WL 4814142, at *9–10; *see Harden v. Roadway Package Sys., Inc.*, 249 F.3d 1137, 1140 (9th Cir. 2001) (holding that delivery driver for predecessor company of FedEx fell within the § 1 exemption even though there was no indication the driver himself actually crossed state lines). On the other hand, furniture salespeople or food delivery drivers generally are not classified as "transportation workers" within the meaning of § 1 even when they occasionally travel interstate to deliver their products to out-of-state customers. *Wallace v. Grubhub Holdings, Inc.*, — F.3d —, 2020 WL 4463062, at *2 (7th

Cir. 2020); *Hill v. Rent-A-Center*, 398 F.3d 1286, 1289–90 (11th Cir. 2005); *see Rittman*, 2020 WL 4814142, at *8–9 & n.8 (distinguishing AmFlex workers from "local food delivery drivers [who] are not 'engaged in the interstate transport of goods'" (citation omitted), and rejecting the dissent's focus on whether "the delivery driver . . . actually crossed state lines").

## III

Applying these principles to the rideshare industry, the district court in *Rogers* concluded that "Lyft drivers, as a class, are not engaged in interstate commerce."[4]  2020 WL 1684151, at *6.  Instead, "[t]heir work predominantly entails intrastate trips, an activity that undoubtedly affects interstate commerce but is not interstate commerce itself."  *Id.*  Even though "some drivers (especially those who live near state borders) regularly transport passengers across state lines, the company is in the general business of giving people rides, not the particular business of offering interstate transportation to passengers."  *Id.*  "Nor does the fact that Lyft drivers frequently pick up and drop off people at airports and train stations mean that they are, as a class, 'engaged in' interstate commerce."  *Id.*  This is because Lyft is not focused on "the service of transporting people to and from airports," but rather "is, in essence, a technologically advanced taxicab company, allowing people to 'hail' rides from its drivers from pretty much anywhere to pretty much anywhere."  *Id.*

Similarly, the district court here contrasted the nature of Uber's business with that of Amazon and various shipping

---

[4] Lyft, like Uber, is a technology company specializing in smartphone-application-based rideshare services.

and package delivery companies that are engaged in delivering products "concededly in the stream of interstate commerce." The district court agreed that these companies' employees, unlike Grice, are exempt under the residual clause even if they "do not themselves deliver items across state lines," and it concluded that because Grice "was not part of a group engaged in foreign or interstate commerce, he does not fall within the [§ 1] exemption." The district court also specifically noted that Grice "has not pointed to other [Uber] drivers' engagement in interstate commerce to argue that he is nevertheless a part of a class of workers engaged in interstate commerce."

Grice notes that the district court also found it significant that he transported passengers, as opposed to goods, and that he never personally crossed state lines. But to the extent these findings are in tension with cases such as *Singh*, *Waithaka*, *Rittman*, and *Rogers*, which emphasized the interstate nature of an employer's business as the critical factor for determining whether a worker qualifies for the § 1 exemption, Grice has still not shown that he is entitled to mandamus relief. He does not allege that he provides rides only, or even primarily, to individuals coming from out-of-state. Moreover, he cites no circuit precedent holding that rideshare drivers, as a class, are "engaged in foreign or interstate commerce."

The closest he comes is *Singh*. There, the Third Circuit remanded to the district court for discovery based on Singh's claim that he frequently drove passengers from the Newark airport "across state lines" to New York. 939 F.3d at 226, 232. But the court did not conclude that Singh, by virtue of this claim, "belongs to a class of transportation workers engaged in interstate commerce or in work so closely related thereto as to be in practical effect part of it." *Id.* at 227.

Instead, it remanded to the district court to decide that question, noting the inquiry should be informed by a variety of factors such as the contents of Singh's agreements with Uber, information regarding the rideshare industry, and information regarding the work performed by rideshare drivers. *Id.* at 227–28. Thus, *Singh* does not suggest that the district court's ruling is "clearly erroneous as a matter of law."

Nor is *Waithaka* particularly helpful to Grice. That case held that "last-mile delivery workers who haul goods on the final legs of interstate journeys are transportation workers 'engaged in . . . interstate commerce,' regardless of whether the workers themselves physically cross state lines." 966 F.3d at 26. But *Waithaka*'s holding was limited to the § 1 exemption status of AmFlex drivers, not gig-economy drivers in general.[5] Unlike Uber, Amazon conceded that its business is focused on the "transport [of] goods or people within the flow of interstate commerce." *Id.* at 13, 26 n.11. Here, Grice provides neither evidence nor caselaw to support his claim that "Uber is clearly in the business of providing transportation services and is engaged in interstate commerce."

---

[5] Our recent decision in *Rittman* confirms this conclusion. There, we joined the First Circuit in holding that AmFlex workers are exempt under § 1 because they "form a part of the channels of interstate commerce[] and are thus engaged in interstate commerce." *Rittman*, 2020 WL 4814142, at *8. Our holding was rooted both in the interstate nature of Amazon's business, *id.* at *9–10, and in the fact that "AmFlex workers complete the delivery of goods that Amazon ships across state lines and for which Amazon hires [them] to complete the delivery," *id.* at *8. On this record, we cannot say that Uber drivers perform, or are hired to perform, a similar function to AmFlex workers.

Grice also points to *United States v. Yellow Cab*, an antitrust case that held the transportation of interstate rail passengers and their luggage between rail stations in Chicago to facilitate their travel is part of "the stream of interstate commerce."    332 U.S. 218, 228–29 (1947), *overruled on other grounds by Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984).    But there, passengers contracted directly with the railroads for this "between-station transportation" service, which was exclusively provided by a single cab company subcontracted by the railroads. *Id.*  The Court also held that "when local taxicabs merely convey interstate train passengers between their homes and the railroad station in the normal course of their independent local service, that service is not an integral part of interstate transportation." *Id.* at 228, 233.

Grice's employment is more like the local taxicab service that the Supreme Court held to be "not an integral part of interstate transportation" in *Yellow Cab*.  Although Uber entered into agreements with the Huntsville and Birmingham airports to allow Uber drivers like Grice to pick up arriving passengers, Grice does not contend that his passengers contracted with the airlines to hire him.  Nor is there any evidence that Grice provided "between-airport transportation" in Huntsville and Birmingham to facilitate his passengers' interstate travel.  Thus, *Yellow Cab*, like *Singh*, supports rather than undermines the district court's rationale for denying Grice's § 1 argument.

Nonetheless, Grice offers an alternative interpretation of the residual clause which, he claims, "follows well settled understandings of the phrase 'engaged in foreign or interstate commerce.'"  Under Grice's construction, the clause would apply to workers who, like him, "provid[e] transportation services to persons or goods traveling across

state lines (i.e., in the flow of foreign or interstate commerce)."  But as the Seventh Circuit noted in *Wallace*, this "interpretation would sweep in numerous categories of workers whose occupations have nothing to do with interstate transport—for example, dry cleaners who deliver pressed shirts manufactured in Taiwan and ice cream truck drivers selling treats made with milk from an out-of-state dairy."  2020 WL 4463062, at *3.  Contrary to Grice's understanding, "the residual exemption is . . . about what the worker does," not just "where the goods [or people] have been."  *Id.*  Today almost every object we buy has some component that comes from out-of-state.  Grice's proposed reading of § 1, which would allow the exception to swallow the rule, goes beyond our precedent.  The district court's decision not to adopt it cannot, therefore, be regarded as clearly erroneous.

IV

In sum, even accepting that there are some tensions between the district court's ruling and recent circuit cases addressing the scope and application of the FAA's § 1 exemption clause, that tension is not enough to render the district court's decision "clear error as a matter of law," the "necessary condition for granting a writ of mandamus."  *In re Van Dusen*, 654 F.3d at 841.  Given the lack of controlling precedent forbidding the result, we are not firmly convinced that the district court erred.  Accordingly, we need not consider the remaining *Bauman* factors.  Because Grice has not met his burden of showing a clear and indisputable right to issuance of the writ, his petition is

**DENIED.**