Filed 11/22/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CITIZENS OF HUMANITY et al., | B276601 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC571913) |
| v. | |
| APPLIED UNDERWRITERS, INC., et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Allan Goodman, Judge.  Affirmed.

Hinshaw & Culbertson, Spencer Y. Kook, Misty A. Murray, and James C. Castle for Defendants and Appellants.

Browne George Ross, Eric M. George, Peter W. Ross, and Corbin K. Barthold for Plaintiffs and Respondents.

Defendants and appellants Applied Underwriters, Inc. (Applied Underwriters), California Insurance Company (CIC), Continental Indemnity Company (CNI), Applied Risk Services, Inc., Joan Sheppard, Westin Fredrick Penfield, and Michael Scott Wichman (collectively, defendants) appeal from an order denying their petition to compel arbitration of a dispute with plaintiffs and respondents Citizens of Humanity, LLC and CM Laundry, LLC (collectively, plaintiffs).  We affirm the trial court's order.

## BACKGROUND

### The RPA

In 2012, plaintiffs purchased from defendants a workers' compensation insurance package known as the EquityComp program.  As part of that program, plaintiffs entered into a Reinsurance Participation Agreement (RPA) with Applied Underwriters Captive Risk Assurance Company, Inc. (AUCRA), a company affiliated with defendants.  The RPA contains an arbitration provision that provides in relevant part:

> "13.  Nothing in this section shall be deemed to amend or alter the due date of any obligation under this Agreement.  Rather, this section is only intended to provide a mechanism for resolving accounting disputes in good faith."

> "(A)  It is the express intention of the parties to resolve any disputes arising under this Agreement without resort to litigation in order to protect the confidentiality of their relationship and their respective businesses and affairs.  Any dispute or controversy that is not resolved informally pursuant to sub-paragraph (B) of Paragraph 13 arising out of or related to this Agreement shall be fully determined in the British Virgin Islands under the provisions of the American Arbitration Association.

2

"(B) All disputes between the parties relating in any way to (1) the execution and delivery, construction or enforceability of this Agreement, (2) the management or operation of the Company, or (3) any other breach or claimed breach of this Agreement or the transactions contemplated herein shall be settled amicably by good faith discussion among all of the parties hereto, and, failing such amicable settlement, finally determined exclusively by binding arbitration in accordance with the procedures provided herein. The reference to this arbitration clause in any specific provision of this Agreement is for emphasis only, and is not intended to limit the scope, extent or intent of this arbitration clause or to mean that any other provision of this Agreement shall not be fully subject to the terms of this arbitration clause. All disputes arising with respect to any provision of this Agreement shall be fully subject to the terms of this arbitration clause."

None of the other agreements between the parties contains an arbitration provision.

The RPA also contains a choice of law provision that states:

"16. This Agreement shall be exclusively governed by and construed in accordance with the laws of Nebraska and any matter concerning this Agreement that is not subject to the dispute resolution provisions of Paragraph 13 hereof shall be resolved exclusively by the courts of Nebraska without reference to its conflict of laws."

**The instant action**

In February 2015, plaintiffs filed a complaint against defendants and AUCRA alleging causes of action against AUCRA for fraudulent inducement in entering into the arbitration agreement, breach of contract, and breach of the covenant of good

3

faith and fair dealing; and against all of the defendants for fraud, false advertising, breach of fiduciary duty, professional negligence, and declaratory relief.

The parties filed competing motions to compel and to stay arbitration of their dispute. In their motion to stay the arbitration, plaintiffs argued that Nebraska law applied pursuant to the choice of law provision in the RPA and that the arbitration provision of the RPA was void under section 25-2602.01(f)(4) of the Nebraska Uniform Arbitration Act (NUAA), which prohibits arbitration of "any agreement concerning or relating to an insurance policy." Plaintiffs further argued that the Federal Arbitration Act (9 U.S.C. §§ 1-16) (FAA) did not preempt the NUAA because another federal statute, the McCarran-Ferguson Act (15 U.S.C. §§ 1011-1015) mandates that state laws "regulating the business of insurance" preempt any federal statute not specifically related to the business of insurance and that impairs state insurance laws. Defendants argued that the FAA governs and preempts the NUAA, and that under the RPA's broad delegation clause, any issue concerning arbitrability should be resolved by the arbitrator.

Before the hearing on defendants' motion to compel arbitration, plaintiffs dismissed AUCRA as a defendant. Plaintiffs then argued that the motion to compel arbitration should be denied because the only defendant that had signed the RPA had been dismissed. At the hearing on defendants' motion, the trial court requested supplemental briefing from the parties on a number of issues, including whether California or Nebraska law should be applied to determine whether defendants have the right to enforce the RPA's arbitration provision, whether Nebraska law bars arbitration of the parties' dispute, and whether the FAA or the McCarran-Ferguson Act applies.

4

In their supplemental brief, plaintiffs argued, among other things, that the McCarran-Ferguson Act displaced the FAA, that both California and Nebraska law applied to bar arbitration, and that the court, not the arbitrator, should determine the consequences of applying the McCarran-Ferguson Act. Defendants argued that the RPA's delegation clause required all questions concerning construction and enforceability of that agreement, including applicability of the NUAA, to be decided by the arbitrator, and that the FAA governed the arbitration provision, which was not displaced by the general choice of law provision.

Following a July 8, 2016 hearing, the trial court denied the motion to compel arbitration. In its written order denying the motion, the trial court first addressed the threshold question of who should decide -- the court or the arbitrator -- the arbitrability of the parties' dispute. The court noted that defendants' sole basis for arguing that the arbitrator rather than the court should decide this issue was the FAA and cases decided thereunder. The trial court then noted that a potential conflict existed between the FAA and the McCarran-Ferguson Act, which allows state laws enacted for the purpose of regulating the business of insurance to reverse preempt the FAA. After analyzing applicable federal case law on the reverse preemption issue, the trial court concluded that reverse preemption applied under the McCarran-Ferguson Act and that Nebraska law applied to invalidate the arbitration clause in the RPA. The trial court denied the motion to compel arbitration and this appeal followed.

## DISCUSSION

### I. Standard of review

We ordinarily review an order denying a petition to compel arbitration for abuse of discretion. However, where, as is the case here, the trial court's denial of a petition to compel

5

arbitration presents a pure question of law, we review the order de novo. (*Gorlach v. Sports Club Co.* (2012) 209 Cal.App.4th 1497, 1505.)

## II. Applicable legal framework

The instant case involves the intersection of three different statutory schemes: the FAA, the McCarran-Ferguson Act, and the NUAA.

### A. The NUAA

Section 25-2602.01(b) of the NUAA provides that a written agreement to arbitrate disputes between the contracting parties "is valid, enforceable, and irrevocable, except upon such grounds as exist at law or in equity for the revocation of a contract, if the provision is entered into voluntarily and willingly." (Neb. Rev. Stats., § 25-2602.01(b).) Subsection (f) of that statute, however, excepts from this provision "any agreement concerning or relating to an insurance policy," thereby prohibiting agreements to arbitrate certain insurance-related disputes.[1]

### B. The FAA

The FAA reflects the fundamental principle that arbitration is "a matter of contract." (*Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63, 67 (*Rent-A-Center*).) Section 2 of the FAA makes arbitration agreements in contracts "involving commerce . . . valid irrevocable, and enforceable" (9 U.S.C. § 2),

---

[1] Section 25-2602.01 of the NUAA provides in relevant part: "(b) A provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable, and irrevocable, except upon such grounds as exist at law or in equity for the revocation of any contract, if the provision is entered into voluntarily and willingly. [¶] . . . [¶] (f) Subsection (b) of this section does not apply to: [¶] . . . [¶] . . . any agreement concerning or relating to an insurance policy other than a contract between insurance companies including a reinsurance contract." (Neb. Rev. Stats., § 25-2602.01.)

and section 4 of the FAA provides for federal district court enforcement of such agreements. The "body of federal substantive law" created by the FAA is applicable, however, in both state and federal courts. (*Southland Corp. v. Keating* (1984) 465 U.S. 1, 12.) State law therefore cannot bar enforcement of the FAA, even in the context of state law claims brought in state court. (*Buckeye Check Cashing, Inc. v. Cardegna* (2006) 546 U.S. 440, 445.) The FAA thus ordinarily preempts conflicting state laws that prohibit arbitration of particular types of claims. (*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 341.)

### C. McCarran-Ferguson Act

The federal McCarran-Ferguson Act provides a narrow exception to federal preemption of conflicting state laws that regulate the business of insurance. Section 1012(b) of the McCarran-Ferguson Act provides: "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, . . . unless such Act specifically relates to the business of insurance." (15 U.S.C. § 1012(b).) "The McCarran-Ferguson Act thus allows state law to reverse-preempt an otherwise applicable federal statute, because the McCarran-Ferguson Act does not permit an 'Act of Congress' to be 'construed to invalidate, impair, or supersede' state law unless the Act of Congress 'specifically relates to the business of insurance.'" (*Safety Nat'l Cas. Corp. v. Certain Underwriters* (5th Cir. 2009) 587 F.3d 714, 720.)

The principal issues presented here are (1) whether the McCarran-Ferguson Act causes the NUAA to reverse preempt the FAA, thereby rendering the arbitration provisions of the RPA unenforceable; and (2) who -- a court or an arbitrator -- should decide the preemption/enforceability issue. We address the latter of these issues first.

7

### III. Who decides arbitrability

"The question whether the parties have submitted a particular dispute to arbitration, *i.e.,* the '*question of arbitrability*,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.' [Citations.]" (*Howsam v. Dean Witter Reynolds* (2002) 537 U.S. 79, 83.) "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." (*First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 944, quoting *AT&T Techs. v. Communs. Workers of Am.* (1986) 475 U.S. 643, 649.)

Defendants argue that paragraph 13(B) of the RPA, which requires "[a]ll disputes between the parties relating in any way to . . . the execution and delivery, construction or enforceability of this Agreement" and "[a]ll disputes arising with respect to any provision of this Agreement" to be "finally determined exclusively by binding arbitration" expresses a clear and unmistakable intent to arbitrate the question of arbitrability.[2]  That provision must be considered, however, in the context of the agreement as a whole (see *Ruble v. Reich* (Neb. 2000) 611 N.W.2d 844, 850 [when interpreting an agreement, court views contract as a whole]), including the provision that requires the RPA to "be exclusively governed by and construed in accordance with the laws of Nebraska."  Under Nebraska law, the entire arbitration clause, including the delegation provision, is potentially unenforceable.

Paragraph 13(B), including the delegation provision, must also be considered in the context of the applicable statutory framework.  (*Bickford v. Board of Education* (Neb. 1983) 336 N.W.2d 73, 74 ["it is the general rule that contracts include applicable statutory provisions, whether specifically mentioned or

---

[2]  Defendants refer to this contract language as the "delegation provision."

8

not"].)  Here, the conflicting preemptive effects of the FAA, the McCarran-Ferguson Act, and the NUAA impact the parties' agreement to arbitrate.  Viewed in context, the language of paragraph 13(B) of the RPA is not clear and unmistakable evidence of the parties' agreement to arbitrate disputes arising under that agreement, including disputes concerning arbitrability.

Defendants contend the Supreme Court's decision in *Rent-A-Center* precludes judicial determination of arbitrability in this case.  In *Rent-A-Center,* the Supreme Court explained that a "delegation provision is an agreement to arbitrate . . . 'gateway' 'questions of arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy" and that such "[a]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the . . . court to enforce."  (*Rent-A-Center, supra*, 561 U.S. at pp. 68-70.)  The court in *Rent-A-Center* further explained that under substantive federal law, an arbitration provision, including a delegation provision, "'is severable from the remainder of the contract'" (*id.* at pp. 70-71), and that a party must challenge the validity of "the precise agreement to arbitrate at issue" before a court will intervene to consider the challenge.  (*Id.* at p. 71.)

The provision at issue in *Rent-A-Center* was a delegation provision "that gave the arbitrator 'exclusive authority to resolve any dispute relating to the . . . enforceability . . . of this Agreement.'"  (*Rent-A-Center, supra*, 561 U.S. at p. 74.)  The party resisting enforcement in *Rent-A-Center* challenged the validity of the arbitration agreement as a whole on the ground that it was unconscionable but did not make any arguments specific to the delegation provision.  (*Ibid.*)  Given the absence of any challenge to the delegation provision, the court in *Rent-A-*

9

*Center* concluded that it must treat that provision as valid and enforceable under the FAA, leaving any challenge to the validity of the arbitration agreement as a whole to the arbitrator. (*Id.* at pp. 73-75.)

*Rent-A-Center* did not involve application of the McCarran-Ferguson Act or the NUAA and is therefore distinguishable from the instant case. *Rent-A-Center* is also distinguishable because plaintiffs' challenge, based on the preemptive effect of the McCarran-Ferguson Act and the NUAA, is directed to the delegation provision as well as the arbitration provision as a whole. (See *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assur. Co.* (4th Cir. 2017) 867 F.3d 449, 455-456 [insured's argument that Virginia statute rendered void "any" arbitration provision in RPA necessarily included challenge to enforceability of delegation provision].) Resolution of those issues are accordingly for the court, and not the arbitrator, to decide. (*Rent-A-Center, supra,* 561 U.S. at p. 71.)

There is also an issue as to whether plaintiffs' challenge to the arbitration provision, premised on preemption of the FAA by the McCarran-Ferguson Act and the NUAA, raises a "question of arbitrability" that can legally be delegated to an arbitrator. We find the Ninth Circuit's analysis in *Van Dusen v. United States Dist. Court for the Dist. of Ariz.* (9th Cir. 2011) 654 F.3d 838 (*Van Dusen*) to be instructive on this issue.

At issue in *Van Dusen* was whether arbitration agreements entered into by the defendant employers and the plaintiff interstate truck drivers came within an exemption under section 1 of the FAA for "'contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.'" (*Van Dusen, supra*, 654 F.3d at p. 840.) The federal district court declined to rule on the applicability of the exemption, concluding that the question of whether the

10

drivers were employees of the defendants was a question for the arbitrator to decide. (*Ibid.*) The drivers sought mandamus relief from the Ninth Circuit, arguing that the district court's failure to address the exemption issue constituted clear error. (*Id.* at p. 842.)

On appeal, the drivers argued that the issue of whether the FAA section 1 exemption applied was not a "question of arbitrability" the parties could legally delegate to an arbitral forum. (*Van Dusen, supra,* 654 F.3d at p. 842.) The Ninth Circuit found that argument to be persuasive, noting that "a district court has no authority to compel arbitration under Section 4 [of the FAA] where Section 1 exempts the underlying contract from the FAA's provisions. [Citation.]" (*Id.* at p. 843.) The court in *Van Dusen* further noted that the defendants' "position that contracting parties may invoke the authority of the FAA to decide the question of *whether the parties can invoke the authority of the FAA* . . . puts the cart before the horse: Section 4 has simply no applicability where Section 1 exempts a contract from the FAA, and private contracting parties cannot, through the insertion of a delegation clause, confer authority upon a district court that Congress chose to withhold." (*Id.* at p. 844.) The Ninth Circuit observed that the United States Supreme Court defines "'questions of arbitrability' as questions of 'whether parties have submitted a particular dispute to arbitration' [citation]" *and* that the question of whether the FAA confers authority on the court to compel arbitration "does not fit within that definition." (*Ibid.*)[3]

---

[3] Although the Ninth Circuit determined that "the best reading of the law requires the district court to assess whether a Section 1 exemption applies before ordering arbitration" the absence of controlling precedent, along with the FAA's policy favoring arbitration, made the question a "relatively close" one

11

The First Circuit, in *Oliveira v. New Prime, Inc.* (1st Cir. 2017) 857 F.3d 7 (*Oliveira*) addressed the same issue presented in *Van Dusen* in a similar dispute involving a motion to compel arbitration where the parties had delegated questions of arbitrability to the arbitrator.  (*Oliveira*, at p. 9.)  Applying the court's reasoning in *Van Dusen,* the First Circuit held that whether the FAA confers authority on a district court to compel arbitration is not a question of arbitrability:  "[T]he question of the court's authority to act under the FAA is an 'antecedent determination' for the district court to make before it can compel arbitration under the [FAA]."  (*Oliveira*, at p. 14.)

Here, as in *Van Dusen* and *Oliveira,* the threshold issue is whether the FAA applies, thereby authorizing the court to compel arbitration of the dispute, or whether such authority is lacking because the FAA is preempted by the McCarran-Ferguson Act and the NUAA.  We agree with the *Van Dusen* court's reasoning that defendants' reliance on the FAA as the basis for compelling arbitration of this threshold issue "puts the cart before the horse."  (*Van Dusen, supra,* 654 F.3d at p. 844.)  We therefore conclude that the trial court did not err by denying defendants' motion to compel arbitration of the preemption issue and the validity of the arbitration agreement, including the delegation provision.

## IV.  Validity of the agreement to arbitrate

The validity of the parties' arbitration agreement turns on whether the McCarran-Ferguson Act applies, whether section 25-2602.01(f) of the NUAA applies, and whether those two statutes together preempt the FAA.

---

and that it could not find the district court's ruling to be "'clearly erroneous'" under the applicable standard for mandamus relief. (*Van Dusen, supra*, 654 F.3d at p. 846.)

### A.  *Applicability of the McCarran-Ferguson Act*

Courts apply a three-part test for determining whether the McCarran-Ferguson Act causes a state law to reverse preempt a federal statute:  (1) whether the federal statute to be preempted specifically relates to the business of insurance, (2) whether the state law was enacted for regulating the business of insurance, and (3) whether application of the federal statute operates to invalidate, impair, or supersede the state law.  (*Am. Bankers Ins. Co. v. Inman* (5th Cir. 2006) 436 F.3d 490, 493 (*Am. Bankers*); *Std. Sec. Life Ins. Co. v. West* (8th Cir. 2001) 267 F.3d 821 (*Std. Sec.*); *Kremer v. Rural Comty. Ins. Co.* (Neb. 2010) 788 N.W.2d 538, 551 (*Kremer*).)

It is undisputed that the FAA does not regulate the business of insurance, and that application of the FAA in this case would invalidate section 25-2602.01(f) of the NUAA.  The determinative inquiry is whether section 25-2602.01(f) of the NUAA was enacted for the purpose of regulating the business of insurance within the meaning of the McCarran-Ferguson Act.  That inquiry is guided by principles articulated by the United States Supreme Court in *United States Dep't of Treasury v. Fabe* (1993) 508 U.S. 491, 500-503 (*Fabe*).

In *Fabe,* the Supreme Court held that an Ohio statute governing the priority of claims against an insolvent insurer is a "law enacted for the purpose of regulating the business of insurance" within the meaning of the McCarran-Ferguson Act and rejected the argument that the Ohio statute was a bankruptcy law rather than a law "regulating the business of insurance." (*Fabe, supra,* 508 U.S. at pp. 498-499, 505-506.)  The court reasoned that although "the Ohio statute does not directly regulate the 'business of insurance' by prescribing the terms of the insurance contract or by setting the rate charged by the insurance company," the business of insurance is not "confined

13

entirely to the writing of insurance contracts, as opposed to their performance." (*Id.* at pp. 502-503.)

The court in *Fabe* emphasized that the focus of the McCarran-Ferguson Act is the relationship between insurer and insured and that "'[s]tatutes aimed at protecting or regulating this relationship [between insurer and insured], directly or indirectly, are laws regulating the "business of insurance."'" (*Fabe, supra*, 508 U.S. at p. 501, quoting *SEC v. National Sec., Inc.* (1969) 393 U.S. 453, 460.) The Supreme Court concluded that "[t]he broad category of laws enacted 'for the purpose of regulating the business of insurance' consists of laws that possess the 'end, intention, or aim' of adjusting, managing, or controlling the business of insurance. [Citation.]" (*Fabe,* at p. 505.)

Applying the principles articulated in *Fabe,* the Nebraska Supreme Court in *Kremer, supra,* 788 N.W.2d 538, addressed the precise issue presented here -- whether section 25-2602.01(f) of the NUAA is a state law enacted for the purpose of regulating the business of insurance within the meaning of the McCarran-Ferguson Act. The court in *Kremer* held that it was, and that section 25-2602.01(f) accordingly reverse preempts the FAA through application of the McCarran-Ferguson Act. (*Kremer*, at p. 553.) The Nebraska Supreme Court reaffirmed this principle in *Speece v. Allied Professionals Ins. Co.* (Neb. 2014) 853 N.W.2d 169, 175.

Federal courts applying *Fabe* have likewise concluded that the FAA is reverse preempted under state laws similar to the Nebraska statute at issue here. (See, e.g., *Am. Bankers, supra,* 436 F.3d 490 [FAA reverse preempted under McCarran-Ferguson Act by Mississippi statute prohibiting arbitration of disputes regarding uninsured and underinsured motorist coverage of personal automobile insurance policies]; *McKnight v. Chicago Title Ins. Co.* (11th Cir. 2004) 358 F.3d 854, 858-859 [FAA reverse

14

preempted by Georgia law prohibiting arbitration clauses in insurance contracts]; *Std. Sec., supra*, 267 F.3d 821 [FAA reverse preempted by Missouri Arbitration Act's prohibition on arbitration clauses in insurance contracts]; *Mutual Reinsurance Bureau v. Great Plains Mut. Ins. Co.* (10th Cir. 1992) 969 F.2d 931, 934-935 [FAA reverse preempted by Kansas statute barring arbitration provision in insurance contracts].)

Consistent with the principles articulated in *Fabe, supra,* 508 U.S. 491, as applied by federal appellate courts and the Nebraska Supreme Court, we agree with the trial court's conclusion in the instant case that section 25-2602.01(f) of the NUAA is a state law enacted for the purpose of regulating the business of insurance. If the NUAA applies in the instant case, by operation of the McCarran-Ferguson Act, it reverse preempts the FAA.

### B. *Applicability of the NUAA*

Defendants argue that even if section 25-2602.01(f) is a state law that regulates the business of insurance, the statute does not apply. They argue that the general choice of law provision in the RPA requiring the RPA to "be exclusively governed by and construed in accordance with the laws of Nebraska" constitutes an agreement to apply Nebraska law to resolve the parties' substantive claims only, and not to incorporate state law rules limiting arbitration. Defendants cite *Mastrobuono v. Shearson Lehman Hutton* (1995) 514 U.S. 52 (*Mastrobuono*) as support for their position. In that case, the Supreme Court considered two seemingly conflicting contractual provisions regarding punitive damages -- an arbitration provision that required "any controversy" arising out of the transactions between the parties to be arbitrated in accordance with the rules of the National Association of Securities Dealers (NASD), which authorized punitive damages awards; and a choice of law

15

provision incorporating "the laws of the state of New York." Under New York case law, the power to award punitive damages was limited to judicial tribunals. (*Id.* at pp. 55, 61.) The court in *Mastrobuono* concluded that the "best way to harmonize" the two provisions was to read the choice of law provision "to encompass substantive principles that New York courts would apply, but not to include [New York's] special rules limiting the authority of arbitrators." (*Id.* at pp. 63-64.)

*Mastrobuono* is distinguishable because it involved two provisions that on their face pointed to different bodies of law with conflicting rules regarding the availability of punitive damages. The Supreme Court drew the distinction between "substantive principles" of law and "special rules limiting the authority of arbitrators" solely as a means of "giv[ing] effect" to both provisions. (*Mastrobuono, supra*, 514 U.S. at p. 64.) Here, however, the RPA has a single provision that unambiguously provides that the RPA "shall be exclusively governed by and construed in accordance with the laws of Nebraska." Although the RPA does refer to the AAA rules, those rules -- unlike the competing arbitration rules in *Mastrobuono* -- do not conflict with Nebraska law. Because there is no need to give effect to any competing provision, there is no basis not to give effect to its plain language incorporating *all* of the laws of Nebraska, including its substantive law prohibiting the arbitration of insurance-related disputes. (See *Bickford, supra*, 336 N.W.2d at p. 74.)[4]

---

[4] During oral argument, both parties discussed *Mastick v. TD Ameritrade, Inc.* (2012) 209 Cal.App.4th 1258, in which the court concluded that a general choice of law provision applying California law operates to invoke the specific provisions of the California Arbitration Act. (Id. at pp. 1264-1265.) We do not

16

Defendants next contend the RPA falls outside the scope of section 25-2602.01(f) and cite *South Jersey Sanitation Co. v. Applied Underwriters Captive Risk Assur. Co.* (3d Cir. 2016) 840 F.3d 138 (*South Jersey*) as support for that argument. In *South Jersey,* the Third Circuit concluded that section 25-2602.01(f) did not invalidate an arbitration provision in a similar RPA because the statute applied only to insurance policies. Disregarding the broad language of the statute prohibiting enforcement of an arbitration provision in "any agreement concerning or relating to an insurance policy," the court in *South Jersey* instead relied on *dicta* by the Nebraska Supreme Court in *Kremer, supra,* 788 N.W.2d at page 552 stating that "'a statute precluding the parties to an insurance contract from including an arbitration agreement for future controversies regulates the insurer-insured relationship.'" (*South Jersey*, at p. 146.) The court in *South Jersey* stated: "This language, while *dicta,* strongly suggests that Subsection (f)(4) of the Nebraska Statute applies only to insurance policies themselves, and that 'any agreement' must be read as an arbitration agreement or provision within such a policy, rather than a derivative investment contract." (*Ibid*., fn. omitted.)

We decline to apply the *South Jersey* court's advisory interpretation of section 25-2602.01(f)(4) because it is inconsistent with the plain language of the statute, which broadly covers "any agreement concerning or relating to an insurance policy." The *South Jersey* court's interpretation nullifies that statutory language, and violates fundamental principles of statutory interpretation that "courts should give meaning to every word of a statute and should avoid constructions that would render any word or provision surplusage," and that "'[a]n

address the parties' arguments concerning *Mastick*, as California law does not govern the instant dispute.

17

interpretation that renders statutory language a nullity is obviously to be avoided.' [Citation.]" (*Tuolumne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029, 1038-1039.) The *South Jersey* court's interpretation is also inconsistent with the principles set forth in *Fabe* that laws regulating the "business of insurance" are not "confined entirely to the writing of insurance contracts" (*Fabe, supra,* 508 U.S. at p. 503), but include "laws that possess the 'end, intention, or aim' of adjusting, managing, or controlling the business of insurance." (*Id.* at p. 505.)

*South Jersey* is also distinguishable. The district court in that case "never found that the RPA falls within the ambit of the Nebraska Statute," (*South Jersey, supra,* 840 F.3d at p. 146) whereas the trial court in the instant case did. There is substantial evidence in the record to support the trial court's finding. The RPA itself allows plaintiffs to participate in an underlying Reinsurance Treaty between AUCRA and CIC, and section 25-2602.01 applies to "any agreement concerning or relating to an insurance policy . . . including a reinsurance contract." (Neb. Rev. Stats., § 25-2602.01.) There was also substantial evidence that the RPA was an integral part of a workers' compensation insurance program defendants sold to plaintiffs and others. A consent order entered into by Applied Underwriters and the California Department of Insurance on September 6, 2016,[5] is further support that the RPA concerns or

---

[5] The consent order prohibits CIC and AUCRA from issuing new RPAs or renewing existing RPAs with respect to any California policy until the RPA is submitted to the Workers' Compensation Insurance Ratings Bureau and the California Department of Insurance for approval in compliance with Insurance Code sections 11658 and 11735. We granted plaintiffs' request that we take judicial notice of the consent order.

18

relates to the workers' compensation insurance policies issued as part of defendants' EquityComp program.  For example, the consent order defines the term "RPA" as "ancillary or collateral to a guaranteed cost workers' compensation insurance policy that covers claims by California workers" and the terms "policy" or "policies" as "a Guaranteed Cost Policy or Policies for which an RPA is in force as of July 1, 2016."  The consent order states that it "applies to policies and RPAs covering loss exposures in California" and that it "is not intended to impact policies or RPAs relating to risks covered outside of California."  There is substantial evidence in the record that the RPA is an "agreement concerning or relating to an insurance policy" within the meaning of section 25-2602.01(f) of the NUAA.

Defendants argue that Nebraska law should not be applied to the instant dispute, because to do so would result in impermissible "extraterritorial" regulation by a state, prohibited by the Supreme Court in *Federal Trade Comm'n  v. Travelers Health Ass'n* (1960) 362 U.S. 293 (*Travelers Health*).  That case, however, is inapposite.

At issue in *Travelers Health* was a Nebraska statute that prohibited Nebraska insurance companies from engaging in unfair trade practices "'in any other state.'"  (*Travelers Health, supra,* 362 U.S. at p. 296.)  A Nebraska insurance company argued that the Nebraska statute, by operation of the McCarran-Ferguson Act, precluded the Federal Trade Commission from regulating the insurance company's conduct outside Nebraska.  The Supreme Court rejected that argument, concluding that the McCarran-Ferguson Act was not intended to allow a state to "regulate activities carried on beyond its own borders."  (*Id.* at p. 300.)

The Nebraska statute at issue in *Travelers Health* sought, by its express terms, to regulate the conduct of an insurer in

19

another jurisdiction.  The NUAA by its terms does not seek to regulate activities carried on outside Nebraska.  The NUAA applies in the instant case because the parties contractually agreed to its application.

## CONCLUSIONS

The threshold issue of whether the FAA applies or is preempted by the McCarran-Ferguson Act and section 25-2602.01(f) of the NUAA was for the court, and not the arbitrator, to decide.  The trial court did not err by adjudicating this gateway issue.

The trial court did not err by concluding that section 25-2602.01(f) of the NUAA is a statute that regulates the business of insurance within the meaning of the McCarran-Ferguson Act.

Application of the FAA would operate to invalidate or impair section 25-2602.01(f) of the NUAA.  The trial court did not err by concluding that the McCarran-Ferguson Act applies and reverse preempts the FAA.

Section 25-2602.01(f) of the NUAA applies to the RPA and renders the arbitration provision contained in the RPA unenforceable.  The trial court accordingly did not err by denying the petition to compel arbitration.

## DISPOSITION

The order denying the petition to compel arbitration is affirmed.  Plaintiffs are awarded their costs on appeal.

## CERTIFIED FOR PUBLICATION


_____, J.

We concur:                                    CHAVEZ

_____, Acting P. J.
ASHMANN-GERST

_____, J.
HOFFSTADT


20