Filed 4/9/26  Maia v. Fonseca CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| NATHALIA MAIA, | B345608 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 24STCV18563) |
| v. | |
| MARIANNE MCKINNEY FONSECA et al., | |
| Defendants and Appellants. | |


APPEAL from an order of the Superior Court of Los Angeles County.  Lia Martin, Judge.  Affirmed.

Patrick Doerr, Michael S. Marron, Dong Gun Lee; Meister Seelig & Fein and Mark B. Chassman for Defendants and Appellants.

Law Offices of Margot Nelson and Margot Nelson for Plaintiff and Respondent.

_____

Marianne McKinney Fonseca (McKinney) and Gente, Inc. (Gente) (collectively, appellants) appeal from the order denying their motion to compel arbitration of a lawsuit filed by the business's cofounder, Nathalia Maia (Maia).[1]  We affirm.  The arbitration agreement cited by appellants does not apply to Maia's claims.

## BACKGROUND

### I.    The Business

In 2021, McKinney and Maia formed Gente, a beauty company specializing in skincare products.  McKinney and Maia were Gente's inaugural co-presidents, co-treasurers, and co-secretaries, as well as its only two shareholders.  McKinney bought about 57 percent of Gente's common stock, and Maia bought the remaining 43 percent.

### II.    Relevant Agreements

Maia entered into several agreements with Gente.  Two of those agreements, the Stock Restriction Agreement (SRA) and the Founder Subscription Agreement (FSA), are relevant here.

The SRA, executed on April 27, 2021, provides that Maia "has subscribed to purchase 300,000 shares . . . of [Gente's] common stock . . . pursuant to that certain [FSA], on even date herewith[.]"  The SRA sets forth various restrictions on Maia's ability to transfer the stock, including a right of first refusal for Gente.

---

[1]    McKinney's legal name is "Marianne Fonseca[,]" but she "sometimes use[s], and [is] referred to by[,] the name from [her] previous marriage, Marianne McKinney."  Indeed, she signed (and is referred to in) all the agreements at issue as "Marianne McKinney[.]"  For clarity, we refer to her as "McKinney."  No disrespect is intended.

2

The SRA also contains the following arbitration clause: "To maintain confidentiality and to avoid, to the maximum extent possible, any litigation by or between [Gente] and [Maia], the [p]arties shall first engage in alternative dispute resolution as set forth below . . . . [¶¶] Following mediation or refusal of any Party to mediate . . . , the [p]arties hereby submit to the jurisdiction of JAMS . . . for binding arbitration of all disputes and disagreements arising from or otherwise relating to this Agreement."

The FSA was not executed until May 11, 2021. The FSA allows Maia to purchase 300,000 shares of common stock in exchange for $10 and the assignment of her interest in any assets related to the business, including intellectual property rights. It also contains multiple provisions restricting Maia's right to transfer the stock. Unlike the SRA, the FSA contains no arbitration provision.

## III. Lawsuit and Motion to Compel Arbitration

In 2022, Maia was removed as an officer of Gente.

Maia sued appellants, bringing three categories of claims: (1) misrepresentation, alleging McKinney promised Maia multiple executive roles to secure Maia's involvement in Gente, only to "fr[ee]ze [her] out of . . . management" once "[p]roduct[s] w[ere] manufactured and ready to ship"; (2) breach of fiduciary duty, alleging that McKinney "mismanaged Gente assets[,] failed to keep [its] books and records[,] failed to keep . . . investors reasonably apprised[,] . . . and failed to pay taxes"; and (3) various statutory labor and employment claims, including unpaid wages and overtime, missed meal and rest periods, and waiting time penalties.

Appellants moved to compel arbitration, relying on the SRA's arbitration clause. Maia opposed the motion. She argued, among other things, that her lawsuit was "not related to the subject matter of the [SRA]." Appellants countered that, under Delaware law, "the [trial c]ourt should defer to the . . . 'arbitrator [to] decide whether [this] dispute falls within the scope of the [arbitration] provision[.]'"

Following a contested hearing, the trial court denied the motion. The court decided the scope of the arbitration provision itself, finding that "the dispute is not covered by" the SRA, as its arbitration clause "is limited to disputes related to the . . . agreement itself."

Appellants timely appealed.

## DISCUSSION

### I. Standard of Review

"Where, as here, there is no evidentiary conflict between the parties, we review the trial court's denial of arbitration de novo. [Citation.] Moreover, [underlying] question[s] of law [are also] subject to de novo review. [Citations.]" (*State ex rel. Aetna Health of California, Inc. v. Pain Management Specialist Medical Group* (2020) 58 Cal.App.5th 1064, 1069.)

### II. Arbitrability

We must begin with a "rather arcane" threshold question: Should the scope of the SRA's arbitration clause be decided by the courts or the arbitrator? (*First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 945.) In other words, have the parties agreed to arbitrate arbitrability?

4

Because of the SRA's choice of law provision, we decide this question according to Delaware law.[2] (*Citizens of Humanity, LLC v. Applied Underwriters, Inc.* (2017) 17 Cal.App.5th 806, 813 [questions as to scope of arbitration clause "must be considered . . . in the context of the agreement as a whole[,] . . . including the [agreement's choice of law] provision"].)

"The question of whether the parties agreed to arbitrate is generally one for the courts to decide and not for the arbitrators." (*DMS Properties-First, Inc. v. P.W. Scott Associates, Inc.* (Del. 2000) 748 A.2d 389, 392.) "[C]ourts should not presume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable evidence that they did so.'" (*Ibid.*)

The SRA provides for arbitration by JAMS. Under Delaware law, that language typically suffices to compel arbitration of arbitrability. (*James & Jackson, LLC v. Willie Gary, LLC* (Del. 2006) 906 A.2d 76, 80 (*Willie Gary*) ["[W]here an arbitration clause . . . generally provides for arbitration of all disputes and also incorporates a set of arbitration rules that empower arbitrators to decide arbitrability[,]" the clause "evidences a clear and unmistakable intent to submit arbitrability issues to an arbitrator[.]"]; see *Fairstead Capital Management LLC v. Blodgett* (Del. Ch. 2023) 288 A.3d 729, 757–758 (*Fairstead Capital Management*) [providing that "'arbitration

---

[2] "Our citations to Delaware authorities include unpublished opinions because 'unreported Delaware court opinions are frequently cited by Delaware courts,' and in Delaware an opinion need not be reported to have persuasive value. [Citations.]" (*The Police Retirement System of St. Louis v. Page* (2018) 22 Cal.App.5th 336, 340, fn. 2; see also *Aprahamian v. HBO & Co.* (Del. 1987) 531 A.2d 1204, 1207 [unpublished opinions are entitled to great deference].)

5

will be administered by JAMS[]' . . . is sufficient under *Willie Gary* to empower the arbitrator to determine whether a particular dispute must be arbitrated"].)

Delaware courts caution, however, that "'the *Willie Gary* framework should not be applied "reflexively in the multiple-contract scenario."' [Citation.] '. . . [I]f various contracts are implicated in a claim and those contracts diverge on the matter of arbitral dispute resolution, *Willie Gary*'s requirement that a provision mandate the arbitration of "all disputes" is impossible to satisfy.' [Citation.] When conflicting choice-of-forum provisions 'muddy the parties' intentions regarding substantive arbitrability, it cannot be said that the parties intended to submit the question of substantive arbitrability to the arbitrator.' [Citations.]" (*Fairstead Capital Management*, *supra*, 288 A.3d at p. 758.)

Here, the parties signed two substantially overlapping agreements which conflict in their attitudes towards arbitrability. The SRA and the FSA both govern Maia's rights to alienate her stock. Assuming arguendo that the SRA is "implicated in [Maia's] claim[s]" (*Fairstead Capital Management*, *supra*, 288 A.3d at p. 758), the FSA is similarly implicated. But although the SRA contains an arbitration clause providing for arbitration by JAMS, the FSA does not. (*Kokorich v. Momentus Inc.* (Del. Ch., May 15, 2023, C.A. No. 2022-0722-MTZ) 2023 Del. Ch. LEXIS 116 *14 [an agreement's "silence on the issue of dispute resolution leads to a presumption that the parties intended for a court to resolve questions of substantive arbitrability"].)

Appellants suggest that there is no conflict between the two agreements because, "[r]eading all of these founding documents

in harmony, the SRA's [arbitration] clause was intended to apply to" almost every other agreement between the parties, including the FSA. We are not persuaded that the parties intended the SRA's arbitration clause to govern the FSA, as the FSA was entered into *after* the SRA. (*REM OA Holdings, LLC v. Northern Gold Holdings, LLC* (Del. Ch., Sept. 20, 2023, C.A. No. 2022-0582-LWW) 2023 Del. Ch. LEXIS 373 *45 ["'[W]here a new, later contract between the parties covers the same subject matter as an earlier contract, the new contract supersedes and controls that issue, if the two agreements conflict.'"].)

Because the SRA and FSA "diverge on the matter of arbitral dispute resolution . . . [']it cannot be said that the parties intended to submit the question of substantive arbitrability to the arbitrator.'" (*Fairstead Capital Management*, *supra*, 288 A.3d at p. 758.) Under Delaware law, the court must determine whether Maia's lawsuit falls within the scope of the arbitration clause in the SRA.

## II. The SRA's Arbitration Clause Does Not Apply to Maia's Claims

Appellants contend that the "broad and clear [arbitration] clause of the [SRA] unequivocally applies to all of [Maia]'s causes of action and compels arbitration." We apply Delaware law to interpret the SRA and determine whether its arbitration provision is enforceable. (See *Harris v. Bingham McCutchen LLP* (2013) 214 Cal.App.4th 1399, 1404 ["'Under California choice-of-law rules, [Delaware] law governs whether the [a]greement is enforceable because the [a]greement's choice-of-law clause adopts [Delaware] law.'"].)

"'When interpreting a contract, the role of a court is to effectuate the parties' intent.'" [Citation.] Absent ambiguity, the

7

court 'will give priority to the parties' intentions as reflected in the four corners of the agreement, construing the agreement as a whole and giving effect to all its provisions.' [Citation.]" (*Fairstead Capital Management*, *supra*, 288 A.3d at p. 759.) In a multi-contract scenario, the court must also "tak[e] into account" the effect, if any, of the parties' other contracts. (*Ibid.*)

Interpreting the various contracts signed by these parties, appellants are not entitled to compel arbitration for two reasons. First, as discussed above, the SRA is superseded. "When a prior agreement and a subsequent agreement cover the same subject matter and the subsequent agreement contains an integration clause, the prior agreement 'need[s] to be memorialized in [the subsequent agreement]' to survive. [Citation.]" (*Fairstead Capital Management*, *supra*, 288 A.3d at p. 760.) Both the FSA and the SRA cover the same subject matter, namely, Maia's right to alienate her shares of Gente stock. The FSA—which was signed *after* the SRA—contains a valid integration clause, providing that the FSA "constitutes the entire agreement between the parties hereto with respect to the subject matter hereof[.]" And the FSA does not memorialize the SRA or any of its provisions, including the arbitration clause. Under Delaware law, the SRA is superseded and cannot be used to compel arbitration. (*Fairstead Capital Management*, *supra*, 288 A.3d at p. 760.)

Second, Maia's claims are not subject to arbitration under the SRA. By providing for arbitration of "all disputes and disagreements arising from or otherwise relating to this Agreement[,]" the SRA does impose a broad arbitration clause. (*Rummel Klepper & Kahl, LLP v. Delaware River and Bay Authority* (Del. Ch., Jan. 3, 2022, C.A. No. 2020-0458-PAF) 2022

8

WL 29831, at *10 (*Rummel Klepper & Kahl*).) But the clause is limited by the narrow scope of the agreement itself. Even the broadest arbitration clause only applies to "issues that touch on contract rights or contract performance." (*Parfi Holding AB v. Mirror Image Internet, Inc.* (Del. 2002) 817 A.2d 149, 151; see also *Fairstead Capital Management, supra*, 288 A.3d at pp. 760–761 ["[A]n arbitration provision in one contract [does] not extend to claims that 'would be independently and separately assertable' even if the agreement did not exist. [Citation.]"].)

Contrary to appellants' repeated assertions, the only subject covered by the SRA is Maia's authority to transfer her shares in Gente. (*Rummel Klepper & Kahl, supra*, C.A. No. 2020-0458-PAF, 2022 WL 29831, at *11 ["'The only question the [c]ourt should decide is whether the subject matter in dispute falls within an arbitration provision.'"].) Maia's claims for misrepresentation, breach of fiduciary duty, and violations of the California Labor Code are neither "related to" nor "aris[e] from" the rights or obligations created by the SRA.

Appellants insist that the SRA precludes any and all litigation because the introduction to the arbitration clause establishes an express intent to "maintain confidentiality and to avoid, to the maximum extent possible, any litigation by or between" the parties. This reading is implausibly broad, and flies in the face of established legal principles. Contracts must be interpreted to "'give effect to *all* [their] provisions[,]'" not just those portions most convenient to one party. (*Fairstead Capital Management, supra*, 288 A.3d at p. 759 (italics added).)

## DISPOSITION

The judgment is affirmed. Appellants shall bear costs on appeal.

9

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
GILBERT*

We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ

---

* Retired Presiding Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.